**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

WILDEARTH GUARDIANS,        )
                                  )
                Plaintiff,    )          Case No. 22-cv-797 KK/JHR
     v.                     )
                                  )
OXY USA, INC. and         )
OXY USA WTP LP         )
                                  )
                                  )
              Defendant.   )
                                  )

---

## <u>CONSENT DECREE AND ORDER</u>

---

## CONSENT DECREE AND ORDER

WHEREAS, WildEarth Guardians ("Plaintiff") brought this action (the "Complaint")

against OXY USA Inc. and OXY USA WTP LP (the "Defendants") under the federal Clean Air

Act (the "Act"), 42 U.S.C. § 7401, et seq., for declaratory and injunctive relief and assessment of

civil penalties for certain alleged violations of the Act and its implementing regulations at the

Turkey Track Central Tank Battery and Gas Sales Compression Facility (the "Turkey Track

Facility") located in Eddy County, New Mexico;

WHEREAS, Defendants include the current owner and operator of the Turkey Track

Facility and all owners and operators during the time of the actions alleged by the Plaintiff to

have violated the Act;

WHEREAS, Defendants include the current owner and operator of the Other Covered

Facilities;

WHEREAS, Defendants include the current owner and operator or parent company for

all New Mexico-based oil and gas exploration and production operations conducted by

subsidiaries of Occidental Petroleum Corporation;

WHEREAS, Defendants deny Plaintiff's allegations and maintain that they have been

and remain in compliance with the Act and are not liable for civil penalties or injunctive relief,

and nothing herein shall constitute an admission of liability;

WHEREAS, the Plaintiff and Defendants (collectively, the "Parties") desire to settle all

matters by this Consent Decree and avoid the costs, delay, and uncertainty of litigation;

WHEREAS, the Parties desire to mitigate the air quality impacts from past, present, and

future emissions from the Turkey Track Facility and to reduce emissions from the Other Covered

Facilities (as defined below), including through infrastructure and operational improvements;

2

WHEREAS, the Parties agree that the settlement of this action through this Consent Decree without further litigation is in the public interest, and is a fair, reasonable, and appropriate means of resolving the matter;

WHEREAS, the Parties further anticipate that actions taken by the Defendants, consistent with this Consent Decree, will result in significant reductions of air pollutant emissions from the Turkey Track Facility and the Other Covered Facilities;

WHEREAS, the Parties agree that the settlement of this action through this Consent Decree will resolve all violations alleged and claims for relief sought by the Plaintiffs.

WHEREAS, pursuant to 42 U.S.C. § 7604(c)(3) of the Clean Air Act ("Act"), this Consent Decree is being forwarded to the United States Department of Justice and to the United States Environmental Protection Agency ("EPA") for the statutorily-mandated forty-five (45) day review period; and

WHEREAS, the Parties consent to the entry of this Consent Decree without trial of any issues.

NOW, THEREFORE, it is hereby ORDERED AND DECREED as follows:

## I.     JURISDICTION, VENUE, AND APPLICABILITY

1.      This Court has jurisdiction over the Parties to and the subject matter of this action under Section 304 of the Act, 42 U.S.C. § 7604 and under 28 U.S.C. §§ 1331.

2.      Venue is proper in this Judicial District under Section 304(c) of the Act, 42 U.S.C. § 7604(c), and under 28 U.S.C. §§ 1391.

3.      Upon the Date of Entry, the provisions of this Consent Decree shall apply to, be binding upon, and inure to the benefit of the Parties. Further, the specific provisions of this

Consent Decree applicable to Plaintiff and Defendants respectively, shall apply to and be binding upon the successors in interest or assigns of Plaintiff and Defendants, respectively.

4.     In the event Defendants propose to sell or transfer, in whole or in part, its legal or equitable interest in the Turkey Track Facility or any of the Other Covered Facilities before the termination of this Consent Decree, or if Defendants' operational responsibilities for the Turkey Track Facility or any of the Other Covered Facilities are transferred or assigned in whole or in part before the termination of this Consent Decree (a "Transfer"), Defendants shall notify Plaintiff of such proposed sale, transfer or assignment, shall advise the proposed purchaser, successor-in-interest, assignee or transferee of the existence of this Consent Decree, and shall obtain the purchaser's, successor-in-interest's, assignee's or transferee's agreement to comply with the terms hereof that apply to Defendants.

5.     In the event of a Transfer by Defendants, Defendants shall file a motion to modify this Consent Decree with the Court to make the terms and conditions of this Consent Decree applicable to the purchaser, successor-in-interest, assignee, or transferee.

## II.     DEFINITIONS

6.     Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in the Clean Air Act, 42 U.S.C. § 7401, et seq., or regulations implementing the Clean Air Act, shall have the meaning set forth in the Clean Air Act or those regulations.

7.     Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.     "Clean Air Act," "CAA," or "Act" means the federal Clean Air Act, 42 U.S.C. §§ 7401-7671q, and its implementing regulations.

b. "Date of Entry" shall mean the date this Consent Decree is approved or signed by the United States District Court Judge.

c. "Date of Lodging" shall mean the date this Consent Decree is filed for lodging with the Clerk of the Court for the United States District Court for the District of New Mexico.

d. "Day" shall mean, unless otherwise specified, calendar day.

e. "Excess Emissions" shall have the meaning set forth in 20.2.7.7.D NMAC.

f. "Excess Emissions Event" shall mean any single occurrence of Excess Emissions from the Turkey Track Facility or Other Covered Facilities.

g. "Parties" shall have the meaning set forth in the recitals.

h. "EPA" shall mean the United States Environmental Protection Agency.

i. "NMED" shall mean the New Mexico Environment Department.

j. "Term" of the Consent Decree shall mean the period of time between the Date of Lodging and the date the Consent Decree is terminated in accordance with Section XIV (Termination).

k. "Technologically Equivalent" shall mean: (1) with respect to the AVOID system, capable of monitoring Defendants' facilities in an equivalent manner as the AVOID system detailed in Exhibit A; and (2) with respect to Tankless Facilities, consistent with a Tankless Facility.

l. "Other Covered Facilities" shall mean Defendants' facilities identified in Paragraphs 18, 19, 20, and 21 of this Consent Decree.

m.  "AVOID system" means the Auditory, Visual, Olfactory Inspection and Detection system designed by Defendants to provide real-time, continuous monitoring at Defendants' facilities, as further detailed in Exhibit A.

n.  "Quarterly Reporting" shall mean four times per year, by March 31, June 30, September 30, and December 31.

o.  "Tankless Facility" shall mean a facility designed and constructed to route oil directly offsite following the final phase of separation.

p.  "Shut-In Practice" shall mean the practices and procedures designed to reduce Excess Emissions detailed in Paragraph 8.f of this Consent Decree.

q.  "GCP-O&G" means NMED's General Construction Permit for Oil and Gas Facilities (GCP–Oil & Gas), issued April 27, 2018 and any modifications thereto.

## III.   INJUNCTIVE RELIEF

### A. Operational Commitments at the Turkey Track Facility

8.  Defendants agree to take the following actions to reduce Excess Emissions at the Turkey Track Facility:

a.  Within 90 days of the Date of Entry, Defendants shall install its AVOID System or a Technologically Equivalent system at the Turkey Track Facility. Defendants estimate the cost of this commitment to be $10,000.

b.  Defendants shall operate the AVOID or Technologically Equivalent system for a minimum period of four years.

c.  Once the AVOID or Technologically Equivalent system is operational, Defendants shall compile the data obtained from its sensors. Defendants shall provide Plaintiff

access to the compiled information on a quarterly basis, within 30 days of the close of each quarter, for a minimum period of four years.

d.  Defendants shall upgrade the Turkey Track Facility to a Tankless Facility expeditiously upon receiving an applicable new or modified permit covering the modified facility, as described in Paragraph 10 below, but no later than December 31, 2022. Defendants estimate the cost of this commitment to be $445,200.

e.  Defendants shall construct or cause to be constructed a secondary sales point to provide redundant pipeline capacity at the Turkey Track Facility to be commenced within 6 months of the Date of Entry. Defendants estimate the cost of this commitment to be $100,000.

f.  Within 30 days of the Date of Entry, Defendants will implement the following Shut-In Practice at the Turkey Track Facility:

  i.  Defendants will track whether gas is being routed to potentially flare at the Turkey Track Facility. The call out center shall send an alarm to the facility operator when the Gas Sales Scrubber Pressure is high, indicating that flaring will likely occur if no steps are taken to reduce pressure.

  ii.  The operator for the Turkey Track Facility will be automatically notified when gas is routed to flare. The operator will assess and determine the cause of the gas being routed to flare and determine whether flaring is a transitory event or if it is likely to continue absent a response from the operator.

  iii.  Where feasible and safe, the operator will identify and bring additional compression online to reroute the gas and avoid flaring.

iv.  If additional compression cannot be identified and safely brought online, or where such additional compression is insufficient to avoid flaring, the operator will identify such wells serving the Turkey Track Facility with high gas-to-oil ratios. Wells identified with high gas-to-oil ratios shall be choked back to reduce production until gas ceases to be routed to flare or such wells are entirely shut-in.

v.  While response time is not fixed due to various complexities associated with individual events, Defendants shall respond expeditiously to evaluate and act on the high pressure or flaring event. Defendants expect initial response time within one hour of a high-pressure alarm, with full control of any Excess Emissions Event expected within 6 hours.

vi.  The operator shall determine the appropriate response to any high-pressure alarm or Excess Emissions Event based primarily on air quality and safety considerations, not financial considerations.

**B.  Permitting Commitments at the Turkey Track Facility**

9.  Defendants agree to incorporate the modifications required to upgrade the Turkey Track facility to a Tankless Facility into a modified registration under the GCP-O&G or other appropriate minor New Source Review authorization or registration. Within 30 days of the Date of Entry, Defendants shall file the appropriate application with NMED as needed for NMED to authorize such modifications.

10.  The new or modified permit application will include total facility-wide emission limits not to exceed the limits included in the draft permit application attached as Exhibit B, including the following:

- VOCs:   54.6 tpy (w/o fugitives), 1,548 lb/hr

- NOx:  27.3 tpy, 41.2 lb/hr

- CO:  71.6 tpy, 175.7 lb/hr

- HAPs:  4.35 tpy, 75.8 lb/hr

11.  Plaintiff agrees that it shall not bring an administrative or judicial appeal challenging NMED's approval of a new or modified GCP-O&G registration or individual minor source New Source Review permit for the Turkey Track Facility, unless Defendants or NMED propose permit limits in excess of the limits included in the draft permit application attached as Exhibit B.

12.  Defendants agree not to intentionally vent gas to avoid routing gas to flare with the intent of using the 10 tpy venting authorization allowed under the GCP-O&G to "make up" for any reductions in allowable facility emissions under the new or modified permit.

13.  In the event that pending litigation in the matter of *WildEarth Guardians v. Environmental Improvement Board*, No. A-1-CA-39522 (filed Feb. 19, 2021), results in modifications to the terms of NMED's GCP-O&G, Defendants shall  comply with any new or modified permit terms once made applicable to Turkey Track. In the event that Turkey Track's existing registrations under NMED's GCP-O&G ceases to be effective, Defendants shall  apply for  a new individual minor source New Source Review air permit for the Turkey Track Facility.

**C.  Reporting**

14.   Defendants agree to provide information to Plaintiff on a quarterly basis regarding any Excess Emissions from the Turkey Track facility required to be reported to NMED pursuant to 20.2.7 NMAC. These reports shall include, but not be limited to, details regarding the cause of any Excess Emissions Event, steps taken to limit duration, corrective measures taken, the point (Emissions Unit No.) at which the Excess Emissions occurred, Excess Emissions Event

start and end date, and Excess Emissions Event start and end time. Such reporting shall be sufficient to verify compliance with the Shut-In Practice described in Paragraph 9.a. Quarterly reports required under this Paragraph 15 shall be due within 30 days of close of each quarter, or by April 30 (Quarter 1: January 1 – March 31); July 30 (Quarter 2: April 1 – June 30); October 30 (Quarter 2: July 1 – September 30); January 30 (Quarter 4: October 1 – December 31).

15.     Defendants agree to provide information to Plaintiff on an annual basis regarding all permitted and excess emissions from the Turkey Track facility, including but not limited to all records required to be kept pursuant to GCP-O&G sections A106.C, A107.D, A108.C, and A207.B, as applicable, including annual totals of emissions for each individual emissions unit. Annual reports shall be due within 60 days of the end of each calendar year.

16.     Defendants agree to provide Plaintiff with the quarterly and annual reports described in Paragraphs 14 and 15 for a period of four years from the Date of Entry.

### D.  Broader Operational and Permitting Commitments

17.     Defendants agree to convert the following three tank battery facilities to Tankless Facilities or to make Technologically Equivalent modifications to such facilities by December 31, 2022:

- Dimension 6

- RT 19 CTB

- Precious CTB

Defendants estimate the cost for compliance with the terms of this Paragraph 18 to be $400,000 for each facility, for a total conversion cost of $1,200,000.

18.     Defendants agree to convert the following seven tank battery facilities to Tankless Facilities or to make Technologically Equivalent modifications to such facilities by December 31, 2023:

- Cedar Canyon 28-4 (estimated cost $500,000)

- Cedar Canyon 22 CTB (estimated cost $600,000)

- Sand Dunes CTB (estimated cost $300,000)

- Pure Gold CTB (estimated cost $400,000)

- Calmon 35-2 CTB (estimated cost $500,000)

- Platinum CTB (estimated cost $500,000)

- Silver CTB (estimated cost $500,000)

Defendants' estimates of the cost for compliance with the terms of this Paragraph 19 for each of the seven facilities is as listed above, for a total conversion cost of $3,300,000.

19.     Defendants agree to construct the currently-planned Lost 18 CTB facility as a Tankless Facility. Defendants estimate the cost of the Lost 18 CTB tankless upgrade to be $500,000.

20.     Defendants agree that any new central tank battery facility constructed or caused to be constructed in the State of New Mexico by Defendants or their subsidiaries shall be constructed as Tankless Facilities, or shall construct any such new facility in a manner Technologically Equivalent to a Tankless Facility.

21.     Defendants agree to apply for modified GCP-O&G registrations or other appropriate minor NSR authorization or registration incorporating the modifications required to upgrade the facilities referenced in Paragraphs 17 and 18 to Tankless Facilities.

22.     Plaintiff agrees that it shall not bring any administrative or judicial appeal

challenging NMED's approval of new or modified GCP-O&G registrations or individual minor

source New Source Review permits incorporating the Tankless Facility commitments for the

facilities listed in in Paragraphs 17, 18, 19 and 20, provided that this limitation does not apply to

new or modified registrations or permits that may be approved subsequent to the incorporation of

the Tankless Facility commitments.

23.     Within 90 days of the Date of Entry, Defendants agree to adopt and implement a

Shut-In Practice functionally equivalent to the Shut-In Practice described in Paragraph 8.f for the

following 42 facilities:

- **Central Tank Batteries**

| Oxy Name | NMED Name | Asset |
|---|---|---|
| GOLD CTB | NC 29 Gold CTB | EAST |
| CALMON 35-2 CTB | Calmon 35 Fed CTB No2 | EAST |
| PLATINUM CTB | NC 34 Platinum CTB | EAST |
| MESA VERDE 18 CTB | Mesa Verde CTB | EAST |
| PRECIOUS CTB | NC 31 Precious SRT CTB | EAST |
| RED TANK 19 CTB | Red Tank 19 State CTB | EAST |
| SAND DUNES CTB | Sand Dunes South Corridor CTB | EAST |
| SILVER CTB | NC 33 Silver SRT CTB | EAST |
| LOST TANK 30-19 FED 31H | Lost Tank 30-19 CTB | EAST |
| RED TANK 27-28 CTB | Red Tank 27-28 CTB | EAST |
| DIMENSIONS 6 | Dimensions 6 CTB | WEST |
| SALT RIDGE CTB | Salt Ridge 17 CTB | WEST |
| CC 15-5 CTB | Cedar Canyon15-5H Battery | WEST |
| WHOMPING WILLOW CTB | Whomping Willow CTB | WEST |
| CC 23 SAT | Cedar Canyon 23-2H Battery | WEST |
| CC 22 SAT | Cedar Canyon 22 Satellite CTB and OGS | WEST |
| CC 21 CTB | Cedar Canyon 21 Fed CTB | WEST |
| Salt Flats | Salt Flat CTB and OGS | WEST |
| CC 28-4 | Cedar Canyon 28-4 CTB | WEST |
| Corral Fly 2-1 (Corral Gorge) | Corral Fly 2-1 CTB | WEST |
| Corral Fly 35-26 | Corral Fly 35-26 CTB | WEST |
| Corral Canyon 36-25 | Corral Canyon CS and CTB | WEST |
| Cypress 33-1 CTB | Cypress 33-1 Battery | WEST |

| Turkey Track CTB | Turkey Track CTB and Gas Sales Compression | WEST |
| Goodnight 24-7 CTB | Goodnight 27-4 Federal CTB | WEST |
| Red Tank 31-5 CTB | Red Tank 31 State No 5H Central Tank Battery | EAST |

- **Compressor Stations**

| Oxy Name | NMED Name | Asset |
|---|---|---|
| Dimensions 6 CGL | Dimensions 6 Gas Lift Compressor Station | WEST |
| Section 8 | Dimensions 6 Section 8 Gas Sales Compressor | WEST |
| CC 28 | Cedar Canyon 28 Compressor Station | WEST |
| CC East Stn | Cedar Canyon East Compressor Station | WEST |
| Corral Fly 1S | Corral 1S Compressor Station | WEST |
| Corral Fly 2N | Corral 2N Compressor | WEST |
| Corral Fly 2S | OXY - Corral CS 2S | WEST |
| Red Tank 19 CGL | Red Tank 19 CGL | EAST |
| Calmon | Calmon CGL | EAST |
| MV East | Mesa Verde East CGL2 | EAST |
| MV West | Mesa Verde West Central Gas Lift Station | EAST |
| NC East | North Corridor East Central Gas Lift | EAST |
| NC West | NC West CGL | EAST |
| SC East | South Corridor East Central Gas Lift | EAST |
| SC West | Precious CGL Ph 1 | EAST |
| Turkey Track CGL | Turkey Track Central Gas Lift Station | WEST |

## IV.    CIVIL PENALTIES

24.    No later than 30 days after the Date of Entry, Defendants shall pay a civil penalty to the U.S. Department of Treasury in the amount of $500,000 in settlement of the alleged violations that are the subject of this action.

25.    Defendants may not deduct any penalties paid under this Decree pursuant to this Section or Section (VI) (Stipulated Penalties) in calculating their federal, state or local income tax.

## V.    MITIGATION

26. Not later than 30 days after the Date of Entry, Defendants will deposit in the Court's

registry the sum of $500,000 (the "Mitigation Payment"). The Mitigation Payment shall be used to fund mitigation project(s) to be selected by the Parties subsequent to this Consent Decree (the "Mitigation Project"). The Mitigation Project shall mitigate the harms of air pollution and improve air quality and/or public health in Eddy and/or Lea County, New Mexico or elsewhere in the surrounding Permian Basin oil production region.

27.     The funds will be expensed upon joint Motion of the Parties. If the Parties fail to file such motion within two years of the Date of Entry, the Mitigation Payment shall be forwarded from the Court's registry to the U.S. Department of Treasury as a civil penalty.

## VI.     STIPULATED PENALTIES

28.     Defendants shall be liable for stipulated penalties for Excess Emissions at the Turkey Track Facility, in accordance with the following:

a.  $2,000 per hour for each hour or partial hour beyond six (6) hours that an Excess Emissions Event occurs.

   i.  Stipulated penalties under this Paragraph 29 shall be calculated on a per-event basis, not a per-pollutant, per-limit, per-standard, or per-provision basis.

   ii.  Stipulated penalties under this Paragraph 29 shall not exceed $25,000 for any single Excess Emissions Event.

   iii.  Defendants shall be entitled to subtract, from any stipulated penalty payment owed under this Section VI, any penalties actually paid to any governmental agency related to the same Excess Emissions Event for which liability for the stipulated penalties has arisen.

14

29.     Defendants shall be liable for a stipulated penalty in the amount of $1,000 for each Excess Emissions Event at the Turkey Track Facility or any facility listed in Paragraph 23 where Defendants fail to comply with the provisions of the Shut-In Practice described in Paragraph 8.f or a functionally equivalent set of practices.

30.     Defendants shall be liable for a stipulated penalty in the amount of $500/day for the first 30 days and $1,000/day for each day thereafter for each failure to comply with the deadlines specified in Paragraphs 8.a, 8.d, 8.e, 18, and 19, such deadlines requiring timely installation of the AVOID system at the Turkey Track Facility (8.a), conversion of the Turkey Track Facility and other facilities to Tankless Facilities (8.d, 18, 19), and construction of secondary pipeline capacity at the Turkey Track Facility (8.e).

31.     Defendants shall be liable for a stipulated penalty in the amount of $250/day for the first 30 days and $500/day for each day thereafter for failure to comply with the quarterly or annual reporting deadlines specified in Paragraphs 15 and 16.

32.     All stipulated penalties shall accrue on a calendar year basis and shall be paid to the U.S. Treasury by March 31 of the following year.

33.     Defendants shall not be liable for any stipulated penalties accrued pursuant to this Decree in excess of $500,000 for any single calendar year.

34.     Stipulated penalties shall not be an exclusive remedy for violations of the Consent Decree. Payment of stipulated penalties shall not restrict Plaintiff's ability to seek specific performance of the terms of the Decree, subject to the Dispute Resolution provisions of Section X.

## VII.   NOTIFICATIONS AND RECORDKEEPING

35.     All notifications, submittals, reports, and other information required by this Consent Decree shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing by U.S. Mail and email.

For the Plaintiff:

Jeremy Nichols
WildEarth Guardians
P.O. Box 7516
Missoula, MT  59807
(303) 437-7663
jnichols@wildearthguardians.org

For the Defendants:

Stephanie A. Simmons
OXY USA Inc.
5 Greenway Plaza, Suite 110
Houston, TX 77046
Stephanie_simmons@oxy.com

## VIII.   FORCE MAJEURE

36.     A "Force Majeure Event," for the purposes of the Consent Decree, is defined as any event beyond the reasonable control of Defendants, or any entity controlled by Defendants (including, without limitation, Defendants' contractors and subcontractors, and any entity in active participation or concert with Defendants with respect to the obligations to be undertaken by Defendants pursuant to this Consent Decree), which  delays or prevents, or can reasonably be anticipated to delay or prevent, compliance with the obligations of the Consent Decree, despite Defendants' best efforts to meet such obligations. The requirement that Defendants exercise "best efforts to fulfill the obligations" includes using best efforts to anticipate any potential Force

16

Majeure Event, and to use best efforts to address the effects of any potential Force Majeure Event as it is occurring, and after it has occurred, such that any delay is minimized to the greatest extent possible. A Force Majeure Event shall include an unanticipated supply chain disruption that renders Defendants unable to timely secure equipment necessary to implement required facility modifications, despite Defendants' best efforts to do so.

37.     Defendants' financial inability to perform any obligation under this Consent Decree shall not constitute a Force Majeure Event.

38.     A Force Majeure Event shall temporarily relieve Defendants of their obligations to meet the deadlines established under Paragraphs 8.a, 8.d, 8.e, and 18. Such deadlines shall be tolled until the Force Majeure Event delaying compliance with the applicable obligations has ceased.

## IX.     EFFECT OF SETTLEMENT AND RESERVATION OF RIGHTS

39.     This Consent Decree represents full and final settlement among the Parties. This Consent Decree resolves, and Plaintiff releases and waives, any and all civil claims, causes of action, demands, actions and/or rights of action, that Plaintiff may have against Defendants or Defendants' corporate affiliates for violations of the Clean Air Act at the Turkey Track Facility and the Other Covered Facilities occurring on and before the Date of Entry of this Consent Decree by the Court. The Parties further agree that the Consent Decree resolves, and Plaintiff releases and waives, any and all civil penalties and injunctive relief related to alleged violations of the Clean Air Act regulatory provisions alleged in the Complaint at the Turkey Track Facility or similar violations at the Other Covered Facilities that may occur from the Date of Lodging through the date of termination of the Consent Decree. Notwithstanding termination of this

Consent Decree pursuant to Section XIV, the requirements of this paragraph are permanent and shall survive termination of this Consent Decree.

40.     Notwithstanding the foregoing, Plaintiff and Defendants reserve all legal and equitable remedies available to enforce the terms of this Consent Decree. Further, nothing in this Consent Decree shall restrict or control Plaintiff's comments, litigation, or any other activity related to state or federal implementation plans not directly relating to the Turkey Track Facility or any of the Other Covered Facilities.

41.     Nothing in this Consent Decree shall be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions. Defendants reserve all legal and equitable remedies available against any such action by the United States.

42.     The failure of any Party to comply with any requirement contained in this Consent Decree will not excuse the obligation to comply with other requirements contained herein.

## X.     DISPUTE RESOLUTION

43.     The dispute resolution procedure provided by this Section may be used to resolve all disputes arising under this Consent Decree, provided that the Party invoking such procedure has first made a good faith attempt to resolve the matter with the other Party. The provisions of this Section X shall be the sole and exclusive mechanism to seek relief from the Court to resolve disputes arising under or with respect to this Consent Decree.

44.     The dispute resolution procedure required herein may be invoked by one Party giving written notice to the other Party advising of a dispute pursuant to this Section. The notice

shall describe the nature of the dispute and shall state the noticing Party's position with regard to such dispute.

45.     In the event one Party asserts that any other Party is in violation of any requirement of this Consent Decree, the asserting Party will provide written notice of such asserted violation to the other Party. Before pursuing legal action to enforce any asserted violation, the noticing Party will provide the other Party with an opportunity to remedy such asserted violation within 30 days of receiving written notice or, in the case of a claimed breach which cannot be reasonably remedied within a thirty (30) day period, an opportunity to take reasonable action to remedy the claimed violation within such thirty (30) day period and, thereafter, diligently complete the activities necessary to remedy the claimed breach.

46.     If the asserted violation is not cured within the applicable time period, the asserting Party may seek relief from the Court.

47.     The Court shall decide all disputes pursuant to applicable principles of law for resolving such disputes. This Court shall not draw any inferences nor establish any presumptions adverse to either Party as a result of invocation of this Section or the Parties' inability to reach agreement.

48.     No party shall be entitled to money damages for any breach of this Consent Decree. Specific performance and stipulated penalties shall be Plaintiff's sole remedies for any breach of this Consent Decree by Defendants. Specific performance shall be Defendants' sole remedy for breach of this Consent Decree by Plaintiff. Notwithstanding the foregoing, in the event of a breach of this Consent Decree, the prevailing party in a judicial action shall also be entitled to collect reasonable attorneys' fees and litigation costs from the party in breach of this Consent Decree.

## XI.    ATTORNEYS FEES AND COSTS

49.    Pursuant to 42 U.S.C. § 7604(d), not later than 30 days after the Date of Entry, Defendants shall pay $50,000 for costs of litigation, inclusive of Plaintiff's reasonably attorney fees, to Plaintiff's counsel by bank draft made payable to "WildEarth Guardians."

50.    Nothing in this Consent Decree shall constitute an admission by any Party as to liability for costs or fees from any other Party.

## XII.    MODIFICATION

51.    The terms of this Consent Decree may be modified only by a subsequent written agreement signed by Plaintiff and Defendants. Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only upon approval by the Court.

## XIII.    RETENTION OF JURISDICTION

52.    Until termination of this Consent Decree, this Court shall retain jurisdiction over both the subject matter of this Consent Decree and the Parties to this Consent Decree to enforce the terms and conditions of this Consent Decree. Following termination, the Court shall retain jurisdiction to enforce the provisions and obligations set forth herein that are permanent.

## XIV.    TERMINATION

53.     This Consent Decree shall terminate on the date four years from the Date of Entry, except as provided in Paragraph 55 below.

54.    In the event that either Party has provided written notice of a dispute under this Consent Decree pursuant to the Dispute Resolution in Section X and such dispute remains unresolved on the date four years from the Date of Entry, this Consent Decree shall not terminate until such dispute has been fully resolved, either by a final judicial decision not subject to further

appeal or by written notice by the Party who provided notice of the dispute that the asserted violation has been cured.

## XV.   LODGING AND ENTRY OF DECREE

55.     The Parties agree to cooperate in good faith in order to obtain the Court's review and entry of this Consent Decree.

56.     Pursuant to 42 U.S.C. § 7604(c)(3), this Consent Decree will be lodged with the Court and simultaneously presented to the United States for its review and comment for a period of 45 days. After the review period has elapsed, the Consent Decree may be entered by the Court. If the Consent Decree is not entered by the Court, the Parties shall retain all rights they had in this litigation before the Date of Lodging.

57.     The Parties agree to cooperate in good to expeditiously obtain EPA and United States Attorney General (Department of Justice, or "DOJ") review and District Court approval. In the event that DOJ or EPA comments upon the terms of this Consent Decree, the Parties agree to discuss such comments to support the entry of the Consent Decree or to make any revisions to the Consent Decree as the Parties determine may be reasonable and appropriate to support entry of the Consent Decree.

## XVI.   SIGNATORIES

58.     Each undersigned representative of a Party to this Consent Decree certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this Consent Decree.

59.     The Parties hereby agree not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree.

## XVII.  COUNTERPARTS

60.     This Consent Decree may be signed in counterparts.


THE UNDERSIGNED Parties enter into this Consent Decree and submit it to this Court for approval and entry.


SO ORDERED:

_____
Kirtan Khalsa
UNITED STATES MAGISTRATE JUDGE


Dated this __18th__ day of __January__, 2023.

FOR PLAINTIFF WILDEARTH GUARDIANS

Date: 10.25.22

John Horning
Executive Director
WildEarth Guardians
301 N. Guadalupe Street, Suite 201
Santa Fe, NM  87501

FOR DEFENDANTS OXY USA INC. AND OXY USA WTP LP

*/s/ Richard Jackson***                   Date: 10/25/2022
Richard Jackson
President
5 Greenway Plaza, Suite 110
Houston, TX 77046

** Signed with permission

**LIST OF EXHIBITS**

Exhibit A: AVOID System Specifications

Exhibit B: Draft Application for GCP-O&G Registration for Turkey Track Facility "Tankless Facility" Modifications